Smith, J.
This is an action brought by Mrs. Pence, who was a daughter of John M. Blackford, deceased, who was a son of Ephraim Blackford, deceased, but who died before his father, against the other heirs of law of Ephraim Blackford, deceasd, who died intestate. It is alleged in the petition tbat Ephraim Blackford died in 1894, and that at the time of his death he was seized in fee simple of two tracts of real estate situate in this county, — the first of which was a tract of about 75-| acres, and the second a tract of 161 40-100 acres. That he also left a personal estate, which after the payment of his debts and the costs of administration amounted to $1500. The petition then sets out the share that each of the heirs of Ephraim Blackford would have in the real estate and personal property, were it not that Charles W. Black-ford, a son, and Mrs. Duke, a daughter of Ephraim, had in the life time of the father, each received from him an advancement of $7,000, in land; and the prayer is that said real estate described may be partitioned, and said personal •estate distributed according to the rights of the parties, taking into the account the advancements so made.
These allegations are denied by some of the defendants at least, and the claim is asserted by them that at the time of *206 his death, Ephraim Blackford was not the owner of this land decribed in the petition,and that the relief asked for should not be granted.
This claim is based on the following state of facts, which clearly appear in evidence.
On the 24th of March, 1880, Ephraim Blackford was the owner of four separate tracts of land, and he was the father of four children, all of whom were then living, viz., C. W. Blackford, Mary E. Pence, Rebecca Duke, and John M. Blackford. On that day a written contract was entered into between these four persons, by which the father sold and agreed to convey in fee simple all of bis real estate as follows: To Charles W. Blackford the home farm of 118 acres on which the said Charles then resided; to Mary E. Pence a tract of 91 acres on which she then resided; to Rebecca Duke, 160 acres in Indiana, and to John M. Blackford a farm of 75 acres, each to receive their deed therefor as a share of the estate of the father; and C. W. Blackford, in consideration of getting more lands than the other thereby agreed to pay to Rebecca Duke, $2177.77 and to John M. Blackford, $713.67 and to Mary E. Duke, $120.77, so as to make them all receive the same amount, and it was provided that the father was to receive rents for the above described lands, (except the Indiana- land), during his natural life, if he wished to claim, the same.
What was the legal effect of the contract? If it was supported by a good and sufficient consideration, our view is that by it, the father sold and bound himself to convey the real estate described, to the parties respectively, and if he failed to do so on reasonable demand, he could have been compelled by appropriate action to do. it, And the children-severally and respectively bound themselves to receive the land so contracted to be conveyed as a part of their father’s estate, and with the payments to be made by C. W. Black-ford to the other three, and which he agreed to make, such *207 conveyances respectively were to be taken as an equal division of all of said land, and to this all of them agreed. This promise and undertaking of O. W. Blackford was binding on him and on the others who agreed to it, and made a good consideration as to the father, who thereby became bound to convey to each, his or her specific tract.
The result of this was, that each of the children immediately became the equitable owner of the tract contracted to be conveyed to him or her, subject to the right of the father to receive rent therefor during his natural life. And the father became simply the holder of the legal title in trust for the child to whom he had contracted to convey it. And if he had died with affairs in this condition, he was not then the owner of it in such sense as to entitle his heirs at law to partition it, other than according to their rights under the contract with their ancestor.
But things did not remain in this condition until the death of Ephraim Blackford." On the day the contract was signed, Ephraim Blackford executed and delivered to Mrs. Duke a deed for the land in Fountain county, Indiana. In addition to this, in the year 1882, Ephraim Blackford executed deeds in fee simple to each of his other three children, thereby conveying to them,respectively, the lands which he had sold and agreed to convey to them respectively. They were not actually delivered by him to the several grantees personally, in his life time; but on the day of their execution, Mr. Blackford handed them to W. P. Peebles, Esq, who had drawn them and the original contract, with the express direction, and without any qualification whatever, that he should keep them in his possession as long as he, Ephraim Blackford, lived, and as soon as he was dead, that Peebles should deliver them to the parties to whom they belonged, and the grantor, during the residue of his life, made no other direction in regard thereto and never again spoke to Peebles on the subject.
*208 What was the effect of this? Did the delivery of the deeds under these circumstances, so operate as to transfer the title to the several grantees of the lands described in these respective deeds, so that, (at least), when they were delivered to them or some one for them, after the death of the grantor, they operated as deeds in presentí, and vested the title in the several grantees as of the date of the delivery of them to Peebles? We are of the opinion that under the law such was the case. We have not had the opportunity to examine carefully the various authorities cited and quoted to some extent by counsel in the able presentation of the case made by them, but it seemed clear to us that the great weight of them was, that where a deed was delivered by one person to another, to be delivered to the grantees absolutely, on the happening of an event which must certainly occur, and not coupled with any condition to be performed by the grantee named therein or by any other person, and where no right is reserved to the grantor to alter the arrangement, that the deed is operative, and takes effect in presentí, and that on the death of the grantor, the grantee is entitled to receive the same, and may enforce the delivery, and that the knowledge or consent of the grantee to the arrangement is not essential or necessary.
But it is unnecessary that we should go so far in this case. The deeds were made in pursuance of a contract made between these parties. Ephraim Blackford was bound to execute them, and did so, and left them with Esquire Peebles to 'be delivered at a time named. By his own act the title passed out of him, and it ought to be presumed that the grantees consented to an act, beneficial to them, and done in pursuance of a contract to which they were all parties.
But aside from this, we think the deeds were accepted by the several grantees. The deed to C. W. Blackford was in fact delivered to him by Peebles after the death of Ephraim, and it is conceded by plaintiff that his title to the lands then *209 became absolute, and there is no claim that the tract conveyed to him is subject to partition, nor that of Mrs. Duke, the deed for which was delivered to her in the life time of the father.
As to the deeds to the other two tracts, it is claimed the facts are different in this: J. M. Blackford died several years before his father, leaving a widow and four children, one of whom was the plaintiff, Mrs. Pence, and two of whom at least were minors at the death of Ephraim Blackford. Mrs. Pence, one of the children of the grantor, also died before her father, leaving one child and heir at law surviving her, Mrs. Johnson, After the death of Ephraim Blackford, Mr. Peebles, through his son, Arthur, undertook to carry out the instructions he had received from Mr. Black-ford. As we recollect the testimony, the deed to John M. Blackford was handed to his widow and the mother of his children and heirs at law, and it thus came into the hands of Mrs Pence, the plaintiff, and her husband, and was brought by the latter to the Recorder’s office, and filed for record. The deed to Mrs. Pence, as I recollect, was given to Mrs. Johnson, the only heir at law of her mother, Mrs. Pence, and was placed on record.
We do not esteem it essential to the validity of a deed left by one with another to be delivered to a third person on the happening of an event, certain to happen, as on the death of the grantor, that the grantee should survive the grantor. If it is a deed in fee simple, and the grantor dies intestate, the heirs will take under it what the ancestor would have taken had he survived the grantor, as the heirs at law of the grantee and the delivery to them by the depositary will be sufficient. What was done in this case will be sufficient as the placing of the deed on record was a substantial acceptance by the heirs of the grantee, and being beneficial to them, their acceptance will be presumed. — ■ On the whole case, and on the several grounds named, we *210 think the plaintiff has failed to maintain her action, and her petition will be dismissed as to any part of the land, except that which was given to her father, J. M. Blackford, deceased, as to which she is entitled to a partition.
E. E. Crocicett and J. Kelly O’Neal, attorneys for plantiff.
Milton Clark and Arthur F. Peebles, attorneys for defendant.